**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Mariafrancesca Gioia,<br><br>                        Plaintiff,<br><br>          -v-<br><br>Johnson and Johnson,<br><br>                   Defendant. | 2:25-cv-2810<br>(NJC) (SIL) |

**MEMORANDUM AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

Before the Court is the tenth Complaint filed by pro se plaintiff Mariafrancesca Gioia relating to injuries that she allegedly sustained as a result of taking Invega, a drug manufactured by a wholly-owned subsidiary of Johnson and Johnson ("J&J") ("Defendant") and prescribed to Gioia by SouthEnd Psychiatry.[1]  (Compl., ECF No. 1, ("*Gioia X*"); *see also* 2:24-cv-1912, Mem. & Order, ECF No. 14 at 2 (order dismissing *Gioia VIII*).) Gioia has also filed a motion to proceed in forma pauperis ("IFP") and a motion for leave to electronically file ("ECF Motion"). (IFP Mot., ECF No. 2; ECF Mot., ECF No. 9.) Defendant has filed a motion requesting a premotion conference in anticipation of a motion to dismiss the Complaint under Rule 12(b)(6)

---

[1] Gioia's other cases are: *Gioia v. Janssen Pharm.,* No. 2:19-cv-4629 ("*Gioia I*"); *Gioia v. Janssen Pharm.*, No. 2:19-cv-5377 ("*Gioia II*") (together, the "2019 Actions"); *Gioia v. Janssen Pharm.,* No. 2:23-cv-1187 ("*Gioia III*"); *Gioia v. SouthEnd Psychiatry*, No. 2:23-cv-1419 ("*Gioia IV*"); *Gioia v. Patterson, Belknap, Webb & Tyler,* No. 2:23-cv-3353 ("*Gioia V*"); *Gioia v. Patterson, Belknap, Webb & Tyler,* No. 2:23-cv-8163 ("*Gioia VI*"); *Gioia v. SouthEnd Psychiatry*, No. 2:23-cv-8164 ("*Gioia VII*"); *Gioia v. Johnson and Johnson*, No. 2:24-cv-1912 ("*Gioia VIII*"); *Gioia v. SouthEnd Psychiatry*; No. 2:24-cv-2259 ("*Gioia IX*"). Notably, Gioia has also filed an eleventh complaint, *Gioia v. Teva Pharm., USA, Inc.*, No. 2:25-cv-4418 ("*Gioia XI*"), relating to injuries allegedly sustained as a result of taking the drug Adderall (amphetamine dextroamphetamine).

of the Federal Rules of Civil Procedure with a request for a filing injunction. (PMC Mot. ("PMC Letter"), ECF No. 12.) Gioia has filed an opposition to Defendant's motion. (Gioia's Opp., ECF No. 14.)

Upon review of the parties' submissions, the Court: (1) grants Gioia's IFP motion for the limited purpose of this Order; (2) dismisses the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)–(ii) and Federal Rule of Civil Procedure 12(b)(6); (3) bars Gioia, under 28 U.S.C. § 1651, from filing any further actions relating to injuries that she allegedly sustained as a result of taking Invega without prior permission from the Court; and (4) dismisses Gioia's ECF Motion as moot.

## BACKGROUND

The litigation history between the parties relating to the drug Invega in the state and federal courts was set forth in the Court's Memorandum and Order dated April 19, 2024 (the "Mem. & Order") in the related case *Gioia VIII*, and that history is incorporated here. *See* Mem. & Order, *Gioia VIII*, No. 2:24-cv-1912 (Apr. 19, 2024). In dismissing the complaints in *Gioia VI*, *VII*, and *IX*, and remanding the complaint in *Gioia VIII* to the New York State Supreme Court, Suffolk County, the Court made clear:

> **Gioia is warned that, if she files another complaint about the same subject matter as Gioia I–IX, including allegations arising from or relating to the medication Invega, the Court will order her to show cause why she should not be barred under 28 U.S.C. § 1651 from filing new civil actions without prior permission from the Court. This warning applies to any complaints filed directly in this Court or properly removed here.**

Mem. & Order, *Gioia VIII*, 2:24-cv-1912 at 23. Undeterred, Gioia filed the present Complaint against Defendant relating to the drug Invega.

**I.      The Complaint[2]**

Invoking this Court's diversity subject matter jurisdiction, the Complaint alleges that

Gioia, a citizen of New York, seeks a damages award "between $12-17 million" against

Defendant, a citizen of New Jersey. (Compl. ¶¶ II (B)(1)(a), (2)(b), (3).) In its entirety, the

Statement of Claim alleges:

> I am the plaintiff, Mariafrancesca Gioia, in this action and on July 3, 2019 I was seeking a lawyer to sue the makers of medication Invega for Failing to Warn about important side effects and ultimate outcome of this medication leading to subclinical hypothyroidism. The defendant was also widely promoting the novel medication without regards to patient demographics and was promoting it even for uses in which it was not FDA approved such as for ADHD and anxiety. The defendant did not warn patients or physicians in any way (voice, pamphlet, website) about the ultimate outcome of Subclinical hypothyroidism and how such an outcome can affect scholastic performance prior to speaking with me on July 3, 2019 where the defendant impersonated lawyers whose phone number and information I found online while seeking counsel for Failure to Warn about Invega and I spoke with the impersonators on the phone about my personal experience with Invega as well as medical knowledge (I do have a Medical Degree). The impersonators pretended to be lawyers who would potentially represent me in such a case and took note of all my information as I heard them typing in the background and promised to call me back as they most likely would be representing me in my case. The impersonators never called back, but website Invega.com changed the following day July 4, 2025 to include the information they failed to warn me about before speaking with me and on the top of the page showed a header than included promissory estoppel regarding my compensation for this information reading "Invega is now approved for children 12-15" and then on July 5, 2019 the header read "Invega is now approved for children 12-17" giving me a signal that I was good to sue them for between $12-15 or $12-17 million. In the process of suing as pro-se I discovered Janssen Pharmaceutical at the time was not legally servable and I was to sue Johnson and Johnson any legal documents. I filed a few complaints since then however have revised my complaint beyond just the Failure to Warn about medication Invega to now include:
>
> 1) Impersonation, or when one impersonates another or a business or emeritus by communication by internet, website, or electronic means with intent to obtain a benefit or injure or defraud another, which

---

[2] Excerpts from the Complaint have been reproduced here exactly as they appear in the original. Errors in spelling, punctuation, and grammar have not been corrected or noted.

includes Breach of Confidential Relationships under New York Penal Law S 190.25.

And

2) Transparency and Purpose Specification were not disclosed/followed to consumer (myself, plaintiff) as per New York Privacy Act. "Individuals have a Private Right of Action that empowers them to take legal action against companies that violate specific provisions of such data privacy law. Privacy Laws hold accountable those who steal or misuse data and are necessary to protect Privacy Rights. The 2023 Senate Bill 365A includes Mandatory Consent which means Companies would be obligated to obtain explicit consent from consumers before processing their personal data. This requirement ensures that individuals have the choice and awareness regarding the use of their information as well as Transparency and Accountability which is where the legislation would establish robust transparency and accountability standards for businesses and this ensures that companies are transparent about their data collection and processing practices and are accountable for how they handle consume information…" www.centraletes.com/everthing-you-need-to-know-about-the-new-york-privacy-act-2021/

And

3) 5.40C Failure to Warn 564 U.S. 605 about medication Invega side effect and ultimate outcome of Subclinical Hypothyroidism in particularly for my case how it affects scholastic performance. The defendant Failed to Warn about this information because it misprescribed without regards to patient population and at times even for reasons not approved by the FDA. Invega was widely promoted at that time meaning that they did not have knowledge about this outcome of Subclinical hypothyroidism and did not have concern for FDA protocol of avoiding such heavy promotion among a novel drug. In addition, my physician that prescribed it to me knew that I was studying medicine and that I had board exams coming up and if there was knowledge about such affects my physician would not have prescribed it to me. Additionally, as can be seen from the website Invega.com before and after speaking with me on July 3, 2024 while Impersonating Lawyers, if the defendant (owners of Invega and Invega.com) took my information of personal experience and medical knowledge without my consent to update their database and website, that means they had failed to warn about this information prior to speaking with me.

4

(Compl. at 6–9.)[3] For relief, Gioia seeks

> $16,000,999.00 from defendant Johnson & Johnson because this was within the original Promissory Estoppel amount the defendant indicated with the abrupt website changes after collecting my valuable information I provided without consent for such purposes that they had priorly failed to know about or warn about.

> In addition, taking the medication Invega without proper warning of ultimate outcome and side effects of subclinical hypothyroidism and effects on scholastic performance made me perform poorly on my second USMLE board exam in that I did not pass on the first attempt. Not passing a USMLE board exam on first attempt eliminates the chance of getting into any United States Medical Residency Programs through the Residency Match system and this is why I was not able to pursue a career in medicine even though all my other credentials would not have eliminated me from the Medical Residency Match. As can be seen in my financial analysis, the amount made would have been around that much plus expenses for school (Ivy League Undergraduate University and Medical School).

> Lastly, the promissory estoppel of the compensation promised for providing this information did not realize as expected. Court filings and trying to navigate the legal system on my own was very stressful and added to the financial and personal setbacks and obstacles presented from Failing to Warn about Invega to begin with.. The promised amount put stress on my family as well as they also personally witnessed the ordeal from when Invega was first misprescribed on account of the Failure to Warn to the Impersonation and taking my information (personal experience and medical knowledge) without consent for such purposes violating Privacy Act Transparency and Purpose Specification Regulations which give me Statutes, Nexus, Cause of Action, and Proof of Failure to Warn I need to bring suit on Johnson & Johnson for the damages caused of my career loss as a physician, Subclinical Hypothyroidism, and emotional distress from the wild goose chase after the Promissary Estoppel.

> The impersonation of lawyers and Promissory Estoppel after collecting my information without consent for purposes to update their database about what they had failed to warn about that I was suing for also obstructed me from further seeking another lawyer to sue them about Failing to Warn about Invega, adding to potential money/financial loss from that suit alone on account of the

---

[3] Gioia has annexed an additional 39 pages of exhibits to her Complaint including a duplicate of her Complaint, various exhibits from other litigation, and printed webpages pertaining to Invega. (ECF No. 1 at 12–51.)

Impersonation and Privacy Act Transparency and Purpose Specification Violations.

(*Id*. at 10–11.)

## II.    Defendant's Motion

On June 18, 2025, Defendant filed a pre-motion conference letter in support of its anticipated motion to dismiss the Complaint pursuant to Rule 12(b)(6), and for an order enjoining Gioia from filing any further action against Defendant arising out of the same subject matter without leave of Court. Citing the dismissals of Gioia's "eleven harassing and meritless lawsuits against Johnson & Johnson, its subsidiaries (i.e., Janssen Pharmaceutical), and its attorneys, asserting baseless claims regarding certain 'side effects' [Gioia] purportedly experienced as a result of her use of prescription antipsychotic medication, Invega," Defendant urges dismissal of the present Complaint "for a myriad of reasons." (PMC Letter at 1–2 (citing *Gioia I*, No. 2:19-cv-4629, 2021 WL 5447330 (E.D.N.Y. Nov. 22, 2021), *appeal dismissed*, No. 22-53 (2d Cir. July 20, 2022), ECF No. 60; *Gioia V*, 2:23-cv-3353, ECF No. 17 at 12 (E.D.N.Y. Oct. 12, 2023) (Order explicitly warning Gioia "that her continued filing of new complaints arising from or relating to her prior litigation involving Janssen Pharmaceutical will not be tolerated. Should Plaintiff file another complaint arising from or relating to her prior litigation involving Janssen Pharmaceutical, the Court will order Plaintiff to show cause why a litigation bar should not be entered."); *Gioia VI*, 2:23-cv-8163, Elec. Order. Nov. 7, 2023 (E.D.N.Y Nov. 7, 2023) (Order requiring Gioia to submit an affidavit explaining why a filing injunction should not be entered against her, to which Gioia did not respond)).

Defendant asserts that the Complaint fails to plead any claim upon which relief may be granted because Gioia's: (1) allegations that Defendant "impersonated lawyers" and "took [her]

information of personal experience and medical knowledge without [] consent" do not give rise to any cognizable claim; (2) claims pursuant to the "Transparency and Purpose Specification" and the "New York Privacy Act" are not plausible because these are not enacted laws and provide no right of action; (3) claims under New York Penal Law § 190.25 fail as there is no private right of action under a criminal statute[4]; and (4) failure to warn claim fails because "this Court has *already* determined that the side effects [Gioia] claims to have experienced were included on the Invega label." (PMC Letter at 2 (emphasis in original) (citing *Gioia I*, 2:19-cv-4629, ECF No. 58 at 5–6 (E.D.N.Y. Nov. 22, 2021) (finding that "nearly all of the alleged side effects [Gioia] experienced are identified in Invega's FDA-approved package insert" of which the Court took judicial notice, and reasoned that "[Gioia]'s allegations of suffering from the very side effects of which defendant warns, requires dismissal")).

Moreover, even if Gioia had plausibly alleged some claim relating to her use of the drug Invega, Defendant asserts that such claims should be dismissed with prejudice as they would be barred by the doctrines of collateral estoppel and res judicata. (PMC Letter at 3.) Because Gioia "had a full and fair opportunity to litigate her claims in her myriad prior proceedings," Defendant seeks dismissal of the Complaint with prejudice. (*Id*.) Further, Defendant urges this Court to order Gioia "to show cause as to why a litigation

---

[4] "A person is guilty under § 190.25(1) if he or she '[i]mpersonates another and does an act in such assumed character with intent to obtain a benefit or to injure or defraud another.' A person is guilty under § 190.25(4) if he or she '[i]mpersonates another by communication by internet website or electronic means with intent to obtain a benefit or injure or defraud another, or by such communication pretends to be a public servant in order to induce another to submit to such authority or act in reliance on such pretense.'" *Sims v. Monaghan*, No. 13-cv-6496, 2015 WL 9307350, at *7 (W.D.N.Y. Dec. 21, 2015); *see also People v. Mohammad Rafikian, also known as Mo Kian*, No. 2014–11351, 2026 WL 602747, at *2 (N.Y.AD.2d. Mar. 4, 2026).

injunction should not be issued against her once and for all. Without an express bar, there is no end in sight to [Gioia's] vexatious conduct." (*Id*.)

### III.    Gioia's Response

Gioia responded to Defendant's letter by filing an unsigned, fifteen-page letter dated June 21, 2025, entitled: "Answer to Pre-Conference Letter And Opposition to Pre-Motion to Dismiss and Injunction." (Opp. Ltr ("Opposition"), ECF No 14.) There, Gioia largely repeats the allegations in the Complaint and provides a litigation history that is belied by her history with this Court as detailed above. Gioia asserts:

> The defense is wrong in stating that so many cases have been filed against Janssen/J&J on my behalf about this matter. This matter happened in July 2019 and then Covid happened and that delayed my first filing a couple of years. My first filing was dismissed without prejudice as it did have merit however I didn't know about legal proceedings or what a cause of action or a statute was. Since then, I have filed other cases on this matter; however, most of them were withdrawn because I was not sure about how the lawyers were not following the laws of legally servable entity and also because it was unclear to me why some cases would be moved to Federal Court. I understand these principles now except for the legally servable entity violations that the lawyers did in the beginning but that ship has passed since J&J is answering to Complaints as well now. Before, J&J (the only legally servable entity for Janssen) would not answer my complaint as in accordance to Promissory Estoppel they promised me when collecting my information while pretending to be lawyers in July 2019. Janssen lawyers whom may have not been aware of this in the beginning and learned about my case by me sending a "Notice of Intent to File" before I knew J&J were their owners acquired a personal aspect to this case and would subsequently answer even if not served and were not following the legally servable entity laws. This is what took so many filings and so much time was this improper behavior and confusion, until eventually even J&J got fed up and now answers the complaint as well. That is why my Complaint has since then changed in its entirety and cannot be judged by Res Judicata.
>
> Any subsequent cases I filed on this matter while moving between NY and NJ were briefly looked at and even they had completely different causes of actions and statutes. Res Judicata can not apply to a case that now includes new statutes and causes of action. I was not able to include these in

the second judgement by EDNY because I was not aware of these statutes and also because I was still expecting a default judgement at that time and was not sure why J&J would sign for and then not answer and only when Janssen heard about would this non legally servable entity answer on behalf of the legally servable entity that would remain silent as if in accordance with the Promissory Estoppel. It was a good thing I did withdraw this case that was supposed to be judged a second time by judge Azrack because at that time I was not aware of these new statutes and causes of action thereby could not have Included them but little to my knowledge at that time the case was judged anyway even though I had asked for it to be withdrawn. I did not receive announcement of the case being judged anyway because I was in the middle of moving at the time and I had asked for it to be electronically uploaded however it never was electronically uploaded so I had no idea that the second judgement happened. This second judgement did not include the statutes and new causes of action because I was not aware of them and I was not aware that the case was still being judged. I did not even include the screenshot evidence nor the letter of Right to Sue from the Federal EEOC. There were many things missing from the second judgement at Eastern District court of New York. Nevertheless ever since the second judgement, that happened without my knowing about the judgement and also without my knowing of these new statutes and causes of action, ever since this second judgement every case that I have filed has been dismissed with prejudice on account of Res Judicata even though the second time it was judged and dismissed with prejudice, I had not included the statutes and causes of action I was not aware of at that time and I also had not included evidence and other important documents such as letter from Federal Equal Employment Opportunity Commission granting me the Right To Sue the individual pharmaceutical company. It has been the lawyers that were not following the legally servable entity laws that have been giving me the run around and also this misunderstanding of the second judgement actually being judged without my awareness thereby lacking important documents to judge the case in full. Most importantly, the meritful case now has the missing Legal Statutes and Causes of Action that I was not aware about before that their lack was the reason why it was dismissed the first two times before being judged now due to res Judicata.

The case having entirely different Statutes and Causes of Action needs proper judgement in its entirety also now including the missing evidence and documents such as Federal EEOC granting me the Right to Sue the individual pharmaceutical company and my Financial Analysis, and evidence of taking my information reflecting my story almost verbatim while now including the valuable medical information I provided them that they had priorly failed to warn about to patients and physicians of Subclinical hypothyroidism which has severe impact on scholastic performance.

Clear evidence of the defendant Failing to Warn is most easily proven by how if the company scrambled to seek this information they failed to warn about to the point they were impersonating lawyers while trying to stop or prevent a potential plaintiff from suing them while collecting this information they indeed had failed to warn about, that most easily and most conveniently proves that they had priorly failed to warn about this information. They were literally trying to obstruct justice from those seeking to sue them about information they failed to warn about that had harmed them. My information proved very valuable to them as I have a Medical Degree and also know the pathophysiology of what they had priorly failed to warn about. They collected this information they had priorly failed to warn about to both patients and physicians and I am lucky to have that proof even if it meant taking my information in an illegal and deceitful manner. These manners not o Lyn provide proof of failing to warn but in addition provide further means of me to sue them because I was never compensated nor gave consent for my information to be used for such purposes. I certainly did not consent to be given the run around by lawyers not following legally servable entity laws and taking things personally rather than giving my case a fair chance to be judged in its entirety.

If the defense is still in denial and wants to prove that that J&J/Janssen did this form of racketeering to collect information from potential plaintiffs that they had priorly failed to warn about to patients and physicians, J&J/Janssen are the sole owners of the website lnvega.com so there is no question that J&J/Janssen did this and in order to collect information from potential plaintiffs like myself that were harmed by information they failed to warn about. There are no other persons that had access to this website and there are no other persons that would have had other motives or interests in sneakingly obtaining this information they had failed to warn about to then update their database and website. There is no way the doctor who prescribed me the medicine was aware of this information either because at the time lnvega was being overly prescribed and misprescribed even for ADHD and for Anxiety, which the FDA did not approve it for but the defendant was pushing anyway. In addition, my doctor knew that I was studying to become a physician. He would not have prescribed this medication if he was aware of the effects it would have on scholastic performance through the ultimate outcome of subclinical hypothyroidism. It was only once speaking to me about my medical knowledge and personal experience did J&J/Janssen first obtain this information they had failed to warn about to patients and physicians.

My first case against Janssen in July 2029 was solely a Failure to Warn case that was dismissed because I did not include evidence or statutes in that one as I was expecting a default judgement following the legally servable entity laws as well as the promissory estoppel. The second time this case was judged in EDNY it was judged after I had withdrawn the case and it did not include evidence and

10

important supporting documents. I was still convinced the legally servable entity was in accordance with the promissory estoppel and would follow a default judgement because that was the behavior J&J versus Janssen was exhibiting at this time. In addition, I had not researched the Statutes and Causes of Action needed to win the case without a Default Judgement therefor was not aware of them and could not have included them. I was not aware that this second judgement in EDNY happened and every case following this judgement was dismissed solely based upon Res Judicata of that incomplete case. Additionally, this new Complaint includes different causes of action that were not included in any other filed Complaints. With regards to the Privacy Act not being illegal it is still actionable within context of my causes of action included in the Complaint because they prove the Failure to Warn and provide further grounds to collect the money defendant owes and promised me for Failing to Warn. In addition, other elements of the Claim are indeed actionable. You can refer to my Legal Data document to see how the Privacy Act also applies in NY.

My Claim can be plausibly asserted because the website lnvega.com is owned only by Janssen/Johnson & Johnson and they are the only ones who could have taken my information unlawfully to update this website with the attempts to Obstruct Justice from potential plaintiffs seeking suit against them. My information happened to be valuable to them and they promised me compensation for it. I have not received that compensation yet but I do have proof of the website Invega.com, which only the defendant has ownership and access to change, thereby proving only the defendant could have committed these acts with the intent to prevent suit against them and to collect information without consent for such purposes. In fact it was for the exact opposite purposes. I have a medical degree and provided not only my personal experience but most importantly I provided them thorough medical pathophysiology that proved Subclinical Hypothyroidism as an ultimate outcome of medication Invega the defendant had priorly failed to warn about as they were atypically broadly and hastingly promoting it without regards to patient population and without warning the physicians about this consequence either.

It is very obvious when reading the screen shots of the before and after websites that the defendant had priorly failed to warn about Subclinical Hypothyroidism and how it related to scholastic and academic performance. In the after screen shot, you can see specifically where the defendant updates their website Invega.com to now include Subclinical hypothyroidism and in particularly how it relates to scholastic multiple choice questions. This proved they had priorly failed to warn about this and that the information came specifically from me while they were pretending to be lawyers as I was seeking lawyers back in July 2019 for failing to warn about this to patients and physicians. I have sworn under oath and will continue doing so and I have provided ample

evidence and information about the occurrence and I have witnesses also. I am sure the phone records can also be found and possibly the fake impersonator lawyer website as well but the evidence provided of the screen shots of website lnvega.com is ample evidence to prove this undeniable occurrence and also that the defendant had failed to warn. In addition, the Federal Equal Employment Opportunity Commission also specifically gave me a "Right To Sue" the pharmaceutical company right after this occurrence. I also explained how Johnson and Johnson had actually promised me a granted amount yet that I have not been able to collect it because the lawyers did not follow the Legally Servable Entity Rules in the beginning and then things got hostile. This case is extremely meritful and shows ample evidence. The Complaint now includes the proper proof, Statutes, and Cause of Action that were not included in prior Complaint. It is wrong for the lawyers to try to prevent this meritful case from getting judged in its entirety when they should be aware of the fact that the second time it was judged in EDNY it did not include evidence or Statutes or Causes of Action because I had asked for the case to be withdrawn and because I was not aware of them at that time. The defense should also know that since then the case was never given any consideration anywhere else because they did a run around with the legally servable entity laws. The defense should thirdly know that since then the case was never judged in its entirety because of Res Judicata based on the second EDNY judgement that did not include Statutes, Causes of Action, Evidence, and Supporting Documents. With regards to counsel's question about my current Complaint including the claim violating business consumer information Privacy Laws, please see below that it does apply in NY also and includes informed consent about purposes of collected information:

"NYPA is a comprehensive consumer privacy law that aims to protect the privacy of the citizens of New York by empowering them to exercise greater control over their personal information and by holding businesses accountable. The New York Privacy Act, advocated by Senator Kevin Thomas (D-Nassau County), passed in the New York State Senate after its third reading on June 8, 2023, and was delivered to the New York State Assembly. The 2023 bill is titled Senate Bill 365A The proposed measures aim to empower consumers with greater control over their privacy and enhance accountability in data processing practices. The key provisions include: 1. Mandatory Consent: Companies would be obligated to obtain explicit consent from consumers before processing their personal data. This requirement ensures that individuals have the choice and awareness regarding the use of their information. 2. Transparency and Accountability: The legislation would establish robust transparency and accountability standards for businesses that handle substantial amounts of personal data. This ensures that companies are transparent about their data collection and processing practices, and are accountable for how they handle consumer information. 3. Oversight of Data Brokers: The Office of the Attorney General would be granted authority to conduct oversight of data brokers. These are entities that collect personal

information about consumers and sell that data to other controllers or third parties. This oversight ensures that data brokers adhere to privacy regulations and responsibly handle consumers' personal information."

https://www.centraleyes.com/everything-you-need-to-know-about-the-new-yorkprivacy-act-2021

(ECF No. 14.)

## LEGAL STANDARDS

### I.   In Forma Pauperis

Upon review of the IFP motion, although the financial information reported is sparse, the Court finds that Gioia is qualified by her financial status to commence this action without the prepayment of the filing fee. Therefore, the IFP motion (IFP Mot., ECF No. 2) is granted for the limited purpose of this Order.

### II.   Sufficiency of the Pleadings

Where a plaintiff is proceeding IFP, 28 U.S.C. § 1915 instructs that "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). At the pleading stage, the court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009)), *aff'd*, 569 U.S. 108 (2013).

This Court construes pleadings "filed by *pro se* litigants liberally and interpret[s] them to raise the strongest arguments that they suggest." *Hunter v. McMahon*, 75 F.4th 62, 67 (2d Cir. 2023) (quotation marks omitted). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)) (quotation

marks omitted). Nevertheless, pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Lomax v. Aegis Funding Corp.*, No. 09-cv-2321, 2010 WL 1633440, at \*2 (E.D.N.Y. Apr. 19, 2010); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (per curiam).

A complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord We The Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.*, 76 F.4th 130, 144 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 2682 (2024). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678–79. While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). The factual allegations of a complaint must be sufficient to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

In addition, Rule 8 of the Federal Rules of Civil Procedure provides, in relevant part, that a complaint "must contain . . . a short and plain statement of the grounds for the court's jurisdiction" and "of the claim showing that the pleader is entitled to relief," and "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a)(1)–(2), (d)(1). Essentially, Rule 8 ensures a complaint provides a defendant with sufficient notice of the claims against it. *See id*. "When a complaint fails to comply with the Rule 8 requirements, the district court has the

14

power, on motion or sua sponte, to dismiss the complaint or to strike such parts as are redundant or immaterial." *Celli v. Cole*, 699 F. App'x 88, 89 (2d Cir. 2017) (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)).

"Despite the liberal treatment courts are instructed to afford to pro se litigants' papers, 'pro se litigants generally are required to inform themselves regarding procedural rules and to comply with them.'" *Dubarry v. Annucci*, No. 21-cv-5487, 2022 WL 4485359, at *2 (S.D.N.Y. Sept. 27, 2022) (quoting *Edwards v. I.N.S.*, 59 F.3d 5, 8 (2d Cir. 1995)); *see also Dumel v. Westchester Cnty.*, No. 19-cv-2161, 2021 WL 738365, at *4 (S.D.N.Y. Feb. 25, 2021) ("[T]he liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law."); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them.").

### III.    Preclusion

"There are limits as to how often the Court can be asked to review the same allegations against the same parties. That limitation is manifested in the doctrine of res judicata." *Baker v. Supreme Ct. for N.Y.*, No. 12-cv-5757, 2013 WL 372005, at *1 (E.D.N.Y. Jan. 29, 2013) (citing *Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993)). In addition, collateral estoppel "bars the relitigation of an issue that was raised, litigated, and actually decided by a judgment in a prior proceeding, regardless of whether the two suits are based on the same cause of action." *Griffin v. Sirva, Inc.*, 291 F. Supp. 3d 245, 251–52 (E.D.N.Y. 2018) (citing *Postlewaite v. McGraw-Hill*, 333 F.3d 42, 48 (2d Cir. 2003)).

The doctrine of res judicata bars a plaintiff from litigating claims that were already raised or could have been raised in a prior action decided on the merits against the same defendants or

those in privity with them. *See Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d

Cir. 2017). "Even claims based upon different legal theories are barred provided they arise from

the same transaction or occurrence" following the entry of a final judgment on the merits.

*Cieszkowska v. Gray Line New York*, 295 F.3d 204, 205 (2d Cir. 2002) (per curiam). "[R]es

judicata applies to pro se plaintiffs whose claims in a second action are based on the same factual

predicates presented in the first action." *Bey v. City of New York*, 454 F.App'x 1, 5–6 (2d Cir.

2011) (citing *Cieszkowska*, 295 F.3d at 205–06). "A district court has not only the power but the

obligation to dismiss complaints . . . on res judicata grounds when the litigation history triggers

it." *Caldwell v. Pesce*, 83 F. Supp. 3d 472, 481 (E.D.N.Y. 2015) (citing *Salahuddin*, 992 F.2d at

449).

### B.      Collateral Estoppel

Collateral estoppel, or issue preclusion, prevents parties from relitigating an issue of fact

or law in a subsequent action that was fully and fairly litigated in a prior one. *See Boguslavsky v.*

*Kaplan*, 159 F.3d 715, 719–20 (2d Cir. 1998). Collateral estoppel applies where "(1) the

identical issue was raised in a previous proceeding; (2) the issue was actually litigated and

decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the

issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on

the merits." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288–89 (2d Cir. 2002); *see also In*

*re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007). Like res judicata, collateral estoppel also applies to

pro se litigations. *See*, *e.g.*, *Caldwell*, 83 F. Supp.3d at 481 ("[T]he doctrines of res judicata and

collateral estoppel apply to pro se litigants." (citing *Austin v. Downs, Rachlin & Martin*

*Burlington St. Johnsbury*, 270 F. App'x 52 (2d Cir. 2008))).

16

## IV.    Litigation Injunction

The All Writs Act, 28 U.S.C. § 1651, empowers this Court to issue an injunction limiting vexatious litigation. *MLE Realty Assocs. v. Handler*, 192 F.3d 259, 261 (2d Cir. 1999); *see also Matter of Hartford Textile Corp.*, 681 F.2d 895, 897 (2d Cir. 1982) ("The equity power of a court to give injunctive relief against vexatious litigation is an ancient one which has been codified in the All Writs Statute, 28 U.S.C. s. 1651(a) (1976)."); *see also In re Martin-Trigona*, 737 F.2d 1254, 1262 (2d Cir. 1984) (a district court has "the power and the obligation to protect the public and the efficient administration of justice from [a vexatious litigant's] litigious propensities"). "[T]he traditional standards for injunctive relief, i.e. irreparable injury and inadequate remedy at law, do not apply to the issuance of an injunction against a vexatious litigant." *In re Martin-Trigona*, 737 F.2d at 1262. Rather, the Second Circuit has identified five factors to be considered in restricting a litigant's access to the court system:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 714 (2d Cir. 2019). In addition, the Court must provide plaintiff with notice and an opportunity to be heard before imposing a filing injunction. *See Moates v. Barkley*, 147 F.3d 207, 208 (2d Cir. 1998) (per curiam).

**DISCUSSION**

### I.    Preclusion

The Second Circuit has repeatedly confirmed that "[u]nder both New York law and federal law, the doctrine of res judicata, or claim preclusion, provides that [a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Sikorsky v. City of Newburgh, New York*, 136 F.4th 56, 62 (2d Cir. 2025); *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997); *see also Federated Dept Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). Thus, claim preclusion bars relitigation if "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [same parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Sikorsky*, 136 F.4th at 62; *see also Blinkoff v. City of Torrington*, No. 23-717, 2025 WL 502041, at *1 (2d Cir. Feb. 14, 2025) (same).

In *Gioia I* and *Gioia II*, the Court dismissed Gioia's failure to warn claims *with prejudice*, where the amended complaint failed to "cure the deficiencies of [Gioia's] failure to warn claim because the amended allegations, like the original allegations, [did] not identify what warnings were provided to plaintiff's physician or how the provided warnings were inadequate." (Mem., *Gioia I*, ECF No. 58 at 4.) And because "nearly all of the alleged side effects [Gioia] experienced are identified in Invega's FDA-approved package insert," the Court ruled that Gioia's "conclusory allegations coupled with [her] allegations of suffering from the very side effects of which [Janssen] warns, requires dismissal of [Gioia]'s claims." (*Id.* at 5–6.) The Court also determined that further leave to amend would be futile in light of Gioia's failure to correct the

18

deficiencies noted in the order dismissing her original complaints. (*Id*. at 6.) Judgment was entered in *Gioia I* and *Gioia II* on November 23, 2021 and, after receiving an extension of time to file an appeal, Gioia appealed to the Second Circuit. (*Gioia I*, ECF Nos. 60–62, Elec. Order, Jan. 19, 2022; *Gioia II*, ECF Nos. 51, 53–54, Elec. Order, Jan. 19, 2022.) The Second Circuit dismissed the appeals on August 5, 2022 "because it lack[ed] an arguable basis in either law or fact." (Mandate, *Gioia I*, ECF No. 63.)

Thus, because the failure to warn claim was already litigated and decided on the merits, further litigation is precluded by res judicata and collateral estoppel. Importantly, under New York's transactional approach, "[t]he res judicata bar extends to all . . . claims arising out of the same transaction or series of transactions . . . even if based upon different legal theories or seeking a different remedy." *Ricks v. Brown*, No. 20-cv-43, 2020 WL 5628969, at *2 (W.D.N.Y. Sept. 21, 2020) (internal quotation marks and citation omitted). Thus, any other claims that may liberally be construed from the Complaint arising out of Gioia's use of the drug Invega are likewise precluded. Accordingly, the failure to warn claim is dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)–(ii).

## II.   The Penal Law, Failure to Warn, and Privacy Act Claims Also Fail on Other Grounds

The additional claims set forth in the Complaint fail as a matter of law. First, insofar as the Complaint seeks relief under New York Penal Law § 190.25, there is no private right of action. *See, e.g., Parkes v. Bluemenfeld Dev. Grp., Ltd.*, No. 25-cv-74, 2025 WL 674149, at *1 n.1 (S.D.N.Y. Mar. 3, 2025) (dismissing claim brought under NY Penal Law and explaining that "a plaintiff cannot enforce criminal law through a civil action"). Second, the reasoning set forth by my colleague Judge Joan Azrack in a prior case brought by Gioia applies equally here: the

failure to warn claim is not plausible given that the very warning that was allegedly missing was included in the Invega labeling. *See supra* Discussion § I at 18–19; *Gioia I*, No. 19-cv-4629, 2021 WL 5447330 at *3 ("Moreover, nearly all of the alleged side effects plaintiff experienced are identified in Invega's FDA-approved package insert . . . Courts have routinely held as a matter of law that a drug manufacturer will not be liable if there is evidence showing that the warning specifically warned of the side effects which occurred."). Third, the Complaint's reliance on "2023 Senate Bill 365A" or the "New York Privacy Act" is misplaced given that the proposed legislation has yet to be enacted. *See* https://www.nysenate.gov/legislation/bills/2023/S365/amendment/A#:~:text=Enacts%20the%20 New%20York%20privacy,whom%20their%20information%20is%20shared (last visited on March 9, 2026).

Thus, the Penal Law, failure to warn, and proposed New York Privacy Act claims set forth in the Complaint are not plausible and are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(b)(i)–(ii) and Rule 12(b)(6).

### III.    Litigation Injunction

Gioia's ten cases demonstrate a pattern of duplicative, vexatious, and harassing lawsuits. Given Gioia's litigation history in this Court and the state court, her continued filing of new complaints against Defendant or those in privity with them relating to the drug Invenga will not be accepted. The instant case is Gioia's tenth in this Court concerning the same subject matter, and her litigation history suggests that she may file yet another action. The Court has an "obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties

20

and an unnecessary burden on the courts and their supporting personnel." *Lau v. Meddaugh*, 229 F. 3d 121, 123 (2d Cir. 2000) (internal quotation marks, citations, and alteration omitted). Ultimately, the Court must determine "whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Eliahu*, 919 F.3d at 713–14 (quoting *Safir v. US Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986)). Here, four of the five factors weigh heavily in favor of imposing such a sanction. With respect to the first and third factors, Gioia has shown a history of filing duplicative, vexatious, and unreasonable lawsuits against Defendant and others relating to the drug Invenga, which has consumed significant Court resources. Gioia's repetitive and incoherent submissions have caused an unnecessary burden on the Court. Gioia's continued filing of frivolous complaints relating to this subject is an abuse of the judicial process. Indeed, "[e]very paper filed with the . . . Court, no matter how repetitious or frivolous, requires some portion of the institution's limited resources. A part of the Court's responsibility is to see that these resources are allocated in a way that promotes the interests of justice." *In re McDonald*, 489 U.S. 180, 184 (1989) (per curiam).

With respect to the second factor, Gioia's filings reveal a lack of any basis for a good faith expectation that she will prevail, as detailed extensively in this Court's written rulings. *See* Mem. & Order, *Gioia VIII*, 2:24-cv-1912 at 2–8, 21 (dismissing the complaints in *Gioia VI, VII, and IX*, remanding the complaint in *Gioia VIII* to New York State Supreme Court, Suffolk County, detailing Plaintiff's extensive litigation history, and warning Plaintiff that she cannot "repeatedly file the same claims in an attempt to obtain a different result").

Finally, this Court has repeatedly warned Gioia about the vexatious, harassing, and duplicative nature of her litigation with no effect. The Court's warnings to Gioia that further

litigation about the same subject matter as *Gioia I–IX*, including allegations arising from or relating to the medication Invega, may lead to the entry of a filing injunction, have not deterred her. *See*, *e.g.*, Mem. & Order, *Gioia VIII*, 2:24-cv-1912 at 23 (warning that litigation injunction may be entered). Gioia's present Complaint, together with her long history of frivolous litigation (*see supra* at 1 n.1), suggest that Gioia may file a new, frivolous Complaint relating to the drug Invega.

With respect to the second factor—whether a litigant is counseled—this Court is particularly sensitive to Gioia's pro se status and has considered her Complaint and Opposition to the PMC Letter in the most positive light possible. However, Gioia was afforded notice and an opportunity to be heard on the propriety of a litigation injunction given that the Defendant's PMC Letter requested entry of a litigation injunction. (*See* ECF No. 12.) Although Gioia filed a lengthy opposition in response, she did not at all address Defendant's argument pertaining a litigation injunction. (*See* ECF No. 14.) Thus, there is sound basis for imposing a filing injunction notwithstanding Gioia's pro se status. *See*, *e.g.*, *Ranasinghe v. Kennell*, No. 16-cv-2170, 2017 WL 384357, at *5 (S.D.N.Y. Jan. 25, 2017) (circumstances showed that "mere dismissal of this action will not hinder [the plaintiff] from initiating further similar proceedings" and "that other types of sanctions would be unavailing") (internal citation omitted), *aff'd*, 718 F. App'x 82 (2d Cir. 2018).

**For all of these reasons, the Court now bars Gioia from filing any new complaint relating to same subject matter as *Gioia I–X*, including allegations arising from or relating to the medication Invega, without first seeking leave of court.** Any motion for leave to file must be captioned **"Application Pursuant to Court Order Seeking Leave to File."** Gioia must

attach a copy of her proposed complaint and attach a copy of this Memorandum and Order with any such motion. The Clerk of the Court is directed to return to Gioia, without filing, any new complaint from her if it is received without a separate application seeking leave to file.

Further, the Court warns Gioia that Rule 11 of the Federal Rules of Civil Procedure applies to pro se litigants. Should she file another frivolous action, it is within the Court's authority to consider imposing monetary sanctions upon her. *See Maduakolam v. Columbia Univ.*, 866 F.2d 53, 56 (2d Cir. 1989) ("Rule 11 applies both to represented and pro se litigants . . . ."); Fed. R. Civ. P. 11.

### IV. Leave to Amend

A pro se plaintiff should ordinarily be given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. Cty. of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (quotation marks and citation omitted). For the reasons set forth above, amendment would be futile and leave to amend is denied.

### CONCLUSION

For the reasons stated above, the Court grants Gioia's motion to proceed IFP (ECF No. 2) and dismisses the Complaint (ECF No. 1) with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii) and Federal Rule of Civil Procedure 12(b)(6). Gioia is barred from filing any further actions relating to same subject matter as *Gioia I–X*, including allegations arising from or relating to the medication Invega, without prior permission from the Court. Finally, Gioia's ECF Motion (ECF No. 9) is dismissed as moot in light of the dismissal of the Complaint.

The Clerk of the Court shall mail a copy of this Order to Gioia at her address of record and shall note such mailing on the docket.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

Dated: Central Islip, New York
        March 11, 2026


                                        */s/ Nusrat J. Choudhury*
                                        NUSRAT J. CHOUDHURY
                                        United States District Judge